UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
|  | : |
| PLAINTIFF, | : |
|  | : Case No. |
| v. | : |
|  | : |
| LEE CHI LING, | : |
|  | : |
| DEFENDANT, | : |
|  | : |
| and | : |
|  | : |
| PERFECT GENUIS LIMITED, | : |
|  | : |
| RELIEF DEFENDANT. | : |
|  | : |

---

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Lee Chi Ling ("Lee") and Perfect Genius Limited ("Perfect Genius"), alleges as follows:

## SUMMARY

1.      Lee and others engaged in a scheme, from at least June 2004 through at least February 2006 (the "relevant period"), to manipulate the price of the common stock of China Energy Savings Technology, Inc. ("China Energy" or the "Company") in violation of the federal securities laws of the United States. The scheme, commonly known as a "pump and dump," was orchestrated by Chiu Wing Chiu ("Chiu"), acting in concert with Lai Fun Sim ("Sim"), Jun Tang Zhao ("Zhao") (collectively, "the Chiu Group"), Lee, and others acting in concert with them.

2.      Lee or entities that she controlled furthered the fraud by, among other things, receiving shares of China Energy directed to her by the Chiu Group; selling some of the shares to profit from the artificially high prices created by transactions directed by the Chiu Group and their dissemination of false and misleading material information about China Energy to investors and the public; and, acting as nominees, along with a number of other entities, which concealed the illegal trading in the shares of China Energy and masked the Chiu Group's control of China Energy.

3.      For example, Lee used almost 550,000 shares of China Energy stock directed to her by the Chiu Group to open a U.S. brokerage account at Capital Growth Financial LLC ("Capital Growth") in the name of Perfect Genius (the "Perfect Genius Account"). Lee then sold at least 193,100 of those China Energy shares into the U.S. market at the artificially inflated prices resulting from the fraud. The Perfect Genius Account controlled by Lee continues to hold the resulting almost $1.5 million in proceeds today.

4.      Lee also acted in furtherance of the scheme in her capacity as Corporate Secretary for two other Chiu-related entities. As an officer for those entities, Lee granted members of the Chiu Group authority over the disposition of shares of China Energy owned by Precise Power Holding Limited ("Precise Power") and a British Virgin Islands ("BVI") entity controlled by Lee and the Chiu Group (the "BVI Nominee"). As a direct consequence of Lee's delegations of authority, thousands of China Energy shares were used as part of the scheme intended to, among other things, manipulate the market price of the security and sell shares into the markets at artificially inflated prices.

5.     By virtue of this conduct, Lee violated Section 10(b) of the Securities

Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5(a) and (c)

[17 C.F.R. §§ 240.10b-5(a) and (c)], and Sections 17(a)(1) and (3) of the Securities Act

of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)(1) and (3)], and, unless enjoined, will

continue to engage in transactions, acts, practices, and courses of business similar to

those alleged in this Complaint.

## JURISDICTION AND VENUE

6.     The Commission brings this action pursuant to Section 20 of the Securities

Act [15 U.S.C. § 77t] and Sections 21 and 27 of the Exchange Act [15 U.S.C. § 78u and

78aa].

7.     This Court has jurisdiction over this action pursuant to Section 22 of the

Securities Act [15 U.S.C. § 77v] and Sections 21 and 27 of the Exchange Act [15 U.S.C.

§§ 78u and 78aa].

8.     Venue is appropriate in this district pursuant to Section 22(a) of the

Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C.

§78aa] because certain acts, and  transactions constituting the violations alleged herein

occurred within the Eastern District of New York.

9.     Defendant Lee and Relief Defendant Perfect Genius, directly or indirectly,

used the means or instrumentalities of interstate commerce or of the mails, in connection

with the acts, practices, and courses of business described in this Complaint.

## DEFENDANT

10.     **Lee Chi Ling** ("Lee"), age 44, is a Chinese citizen who resides in Hong

Kong.  Lee was President, Vice President, and Secretary of Perfect Genius; Corporate

- 3 -

Secretary of Precise Power, a BVI entity controlled by the Chiu Group and a prior relief defendant in <u>SEC v. China Energy Savings Technology Inc., et al.</u>, Civil Action No. 06-6402 (Docket no. 2). ("SEC v. China Energy"); and Corporate Secretary of the BVI Nominee, also controlled by the Chiu Group and Lee.

**RELIEF DFENDANT**

11.    **Perfect Genius Limited** ("Perfect Genius") is a BVI entity with a Hong Kong address. During the relevant period, Perfect Genius was named as the owner of brokerage account number XXXX-0875 ("the Perfect Genius Account") at Capital Growth Financial LLC ("Capital Growth"). Lee was listed as the sole officer of Perfect Genius on account documents. Lee and the Chiu Group used the Perfect Genius Account in furtherance of their scheme to defraud and to hold proceeds of that fraud.

**FACTUAL ALLEGATIONS**

**I.    Procedural Background**

12.    On April 20, 2007, this Court entered a default judgment against China Energy, Chiu, Sim, Zhao, other members of the Chiu Group, and others finding that they violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5)] and Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)] as a result of the conduct alleged in the SEC's Complaint filed with this Court in <u>SEC v. China Energy</u> on December 4, 2006. (CV-06-6402, Docket no. 61). On March 27, 2009, this Court entered a final judgment against China Energy, Chiu, Sim, Zhao, and other members of the Chiu Group finding the defendants joint and severally liable for disgorgement of

- 4 -

approximately $30 million, representing ill-gotten gains resulting from the fraud alleged in <u>SEC v. China Energy</u>. (CV-06-6402, Docket no. 107).

13.     On July 6, 2009, this Court also granted summary against relief defendants Precise Power, Amicorp Development Ltd., Essence City Limited, and Yan Hong Zhao, in <u>SEC v. China Energy</u>.  As part of its ruling, this Court ordered them to disgorge proceeds of sales of China Energy stock held in certain brokerage account located at Capital Growth, a registered broker-dealer that ceased operations in 2008.  (CV-06-6402, Docket no. 109).  This Court entered a final judgment reflecting its ruling on July 31, 2009, (CV-06-6402, Docket no. 111), and an amended final judgment on December 23, 2009.  (CV-06-6402, Docket no. 117).

## II.     The Pump-and-Dump Scheme

14.     In 2004, the Chiu Group initiated an elaborate series of transactions designed to enable the Chiu Group to:  (a) acquire tens of millions of shares of a public company to obtain control over the public float of China Energy's securities; (b) manipulate China Energy's stock price through fraudulent devices, including materially misleading press releases and public filings, insider stock transactions, and share giveaways; and, then, (c) sell China Energy shares at artificially inflated prices. Lee facilitated the scheme by personally selling or enabling the Chiu Group and others to sell hundreds of thousands of shares of China Energy stock into the markets at artificially inflated prices and providing access to other shares for use in the scheme as described below.  Lee concealed the Chiu Group's misconduct and control of China Energy through straw parties and nominees (including Perfect Genius, Precise Power, and the BVI

- 5 -

Nominee), which enabled Lee and the Chiu Group to sell China Energy securities at artificially inflated prices based upon the fraud.

A.    **Creation of China Energy and Distribution of its Shares to the Chiu Group and Lee for Use in the Scheme**

15.    The first step in the scheme was to acquire a public company. In June 2004, using the BVI nominee as a straw party, the Chiu Group and others not named in this Complaint acquired Rim Holdings, Inc. ("Rim"), a Nevada shell corporation. In August 2004, Rim was renamed China Energy.

16.    Following the acquisition, between June 2004 and July 2005, China Energy transferred over 22 million shares worth approximately $250 million to Chiu Group controlled entities. In return, China Energy received an asset valued at less than $20 million on its corporate books.

17.    The Chiu Group effected the transfer of the 22 million shares through a series of transactions involving and among entities and individuals controlled by the Chiu Group. In turn, some of those 22 million shares were assigned to other Chiu Group controlled entities through a series of transactions involving nominees, including three for whom Lee was a control person.

18.    The entities for which Lee was an officer, director, or owner received the following shares as a result of the various transactions: (a) in connection with the Rim transaction, the BVI Nominee received at least 128,000 China Energy shares; (b) Precise Power received at least 100,000 shares that had originally been transferred to another Chiu Group related entity; (c) Perfect Genius received 193,100 shares that originally had been assigned to a Company insider; and (d) Perfect Genius also received 350,000 of the 6.9 million shares that were originally assigned to New Solomon

- 6 -

Consultants ("New Solomon"), a Chiu Group controlled entity and defendant in <u>SEC v.</u>
<u>China Energy</u> that became the majority owner of China Energy. Perfect Genius, Precise
Power, and the BVI Nominee, like other Chiu Group nominees, received their China
Energy shares without the payment of adequate consideration for all shares received.

19.     Ultimately, through a series of transactions, including those involving Lee
and entities for which she was a control person, the Chiu Group gained control of more
than 65% of China Energy's outstanding common stock.

20.     After obtaining control of China Energy, the Chiu Group fraudulently
obtained a listing for China Energy on the Nasdaq National Market System ("NMS") in
order to maximize profits from their scheme. In the process, the Chiu Group provided
NMS with false and misleading information concerning, among other things, the number,
identity, and relationship among China Energy's shareholders.

**B.      The Chiu Group's Manipulation of the Stock Price**

21.     During the relevant period, the Chiu Group issued misleading press
releases and engaged in a series of manipulative transactions intended to create the
appearance of market activity in China Energy securities. The Chiu Group engaged in a
pattern of trading in the securities of China Energy shares with the intent to artificially
increase the trading volume and price of China Energy stock to allow Lee and others to
sell shares to profit from the inflated prices.

**C.      Lee's Use of Precise Power and the BVI Nominee and their Shares of
          China Energy in Furtherance of the Scheme**

22.     As described more fully below, Lee knowingly or recklessly engaged in
the pump-and-dump scheme that enabled the Chiu Group to artificially raise the price of
China Energy stock and that allowed Lee and members of the Chiu Group to profit from

- 7 -

the market manipulation by selling shares at inflated prices. For example, as Corporate Secretary for Precise Power and the BVI nominee, Lee authorized transfers of China Energy shares owned by those entities for use in furtherance of the scheme.

23.     Specifically, on May 31, 2005, as the Corporate Secretary of Precise Power, Lee gave written authorization for Zhao (as discussed above, one of the defendants in SEC v. China Energy), to control the disposition of China Energy stock certificates issued to Precise Power. On the same day, Zhao requested that 77,251 shares of China Energy stock be transferred into street name for sale. Without Lee's consent and grant of authority, Zhao would have been unable to issue the instructions that ultimately allowed the sale of Precise Power's China Energy stock as part of the fraudulent scheme and resulting in hundreds thousands of dollars in illicit profits.

24.     Lee also knowingly or recklessly allowed the Chiu Group to use Precise Power's shares of China Energy stock to further the scheme in other ways. Zhao, and others acting in concert with him, also used shares from the Precise Power account to pay a promoter who solicited others (some of whom resided at the time in the Eastern District of New York) to purchase shares of China Energy's stock to artificially increase the price. In addition, using delegated authority from Lee, Zhao sold at least 100,00 additional shares of thousands of China Energy stock into the markets from the Precise Power account at artificially inflated prices, reaping hundreds of thousands of dollars in illicit profits.

25.     Similarly, as part of the fraudulent scheme, Lee delegated her corporate authority over the disposition of at least 128,000 China Energy shares owned by the BVI Nominee to a Chiu Group designee. Based on the authority provided, the designee then

- 8 -

issued orders to the transfer agent that resulted in those shares of China Energy stock being put into street name at the BVI nominee's broker for sale into the market as part of the scheme.

**D. Lee Used the Perfect Genius Account to Profit from the Fraudulent Scheme**

26.    Lee also knowingly or recklessly participated in the fraudulent scheme by, among other things, opening a U.S. brokerage account at Capital Growth in the name of Perfect Genius on January 23, 2006.  Lee established Perfect Genius as a vehicle in furtherance of the scheme, and the account was only used for the deposit and sale of China Energy shares as part of the fraud.  Perfect Genius acted at all relevant times pursuant to the direction and control of Lee and other members of the Chiu Group.

27.    Although Lee was listed as the sole owner, officer, and director of Perfect Genius, other members of the Chiu Group were intimately involved in opening and managing the account.  In fact, Lee instructed Capital Growth to rely on information that was included with her account opening documentation, which she indicated had been provided by Sim, the Corporate Secretary and Director of China Energy, against whom this Court issued a default judgment in SEC v. China Energy.  In addition, when Lee opened the account, she deposited two stock certificate that were directed to Lee by the Chiu Group.

28.    In sum, Lee opened the Perfect Genius Account to be used in concert with other nominee accounts to sell China Energy shares into the market at artificially inflated prices to obtain ill-gotten profits while masking the scheme, and Perfect Genius was yet another entity ultimately controlled by the Chiu Group.

- 9 -

29.     The Chiu Group, Lee, and others acting in concert with them sold these and other shares into the U.S. market at the artificially inflated prices resulting from their fraud, enabling the Chiu Group, Lee, and others working with them to reap tens of millions of dollars in proceeds.  Throughout the period of the fraud, Lee, through Perfect Genius, sold 193,000 shares of China Energy stock on February 9, 2006, generating proceeds of approximately $1,360,150 in the brokerage account in the name of Perfect Genius that Lee controlled at Capital Growth.  These proceeds remain in the Perfect Genius Account at National Financial Services LLC, a Fidelity Investments company that served as Capital Growth's clearing broker.

30.     Lee also attempted to sell additional shares of China Energy stock held in the Perfect Genius Account but was prevented from doing so because the shares were restricted control shares subject to limitations on their sale, including a prohibition on sale into the market.

### CLAIMS FOR RELIEF

### COUNT ONE

**Against Lee for Violations of Section 10(b) of the Exchange Act
[15 U.S.C. § 78j(b)] and Rule 10b-5(a) and (c) thereunder
[17 C.F.R. §§ 240.10b-5 (a) and (c)]**

31.     The Commission realleges and incorporates herein paragraphs 1 through 30 as if fully set forth herein.

32.     By engaging in the conduct described above, Lee, by use of the means or instruments of transportation or communication in interstate commerce, or of the mails, or of the facilities of the Nasdaq National Market System, in connection with the purchase or sale of securities:  (a) employed devices, schemes, or artifices to defraud, and

(b) engaged in acts, practices, or courses of business which have operated, or are operating as a fraud or deceit.

33.     By reason of her actions as alleged herein, Lee violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(a) and (c) [17 C.F.R. §§ 240.10b-5(a) and (c)] thereunder.

## COUNT TWO

### Against Lee for Violations of Securities Act Sections 17(a)(1) and (3)
### [15 U.S.C. §§ 77q(a)(1) and (3)]

34.     The Commission realleges and incorporates herein paragraphs 1 through 30 as if fully set forth herein.

35.     By engaging in the conduct described above, Lee, in the offer or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, directly or indirectly, acting with the requisite state of mind, (a) employed devices, schemes, or artifices to defraud, and (b) engaged in acts, transactions, practices, or a course of business that operated as a fraud or deceit upon purchasers.

36.     By reason of her actions alleged herein, Lee violated Sections 17(a)(1) and (3) [15 U.S.C. §§ 77q(a)(1) and (3)] of the Securities Act.

## COUNT THREE

### Against Relief Defendant

37.     The Commission realleges and incorporates herein paragraphs 1 through 30 as if fully set forth herein.

38.     By virtue of the foregoing, Relief Defendant Perfect Genius was unjustly enriched through the monies derived as proceeds of the fraud and shares of China Energy stock that it received from the Chiu Group and for which it did not pay adequate

consideration. These monies and shares derived directly or indirectly from the illegal conduct of Lee and the Chiu Group.

39. Relief Defendant has control over assets or proceeds directly or indirectly related to the violations of the federal securities laws by the Chiu Group and Lee.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Securities and Exchange Commission, respectfully requests that this Court:

a) enter a judgment permanently restraining and enjoining Lee, and her agents, servants, employees, attorneys, and all persons in active concert or participation with her who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(a) and (c) [17 C.F.R. §§ 240.10b-5(a) and (c)] thereunder, and Securities Act Sections 17(a)(1) and (3) [15 U.S.C. §§ 77q(a)(1) and (3)];

b) enter an order directing Perfect Genius to disgorge any ill-gotten gains realized from the conduct alleged herein and to pay any prejudgment interest thereon;

c) enter an order directing Lee to disgorge an amount equal to all moneys obtained through the illegal activities described above and to pay any prejudgment interest thereon; and

   d)  grant such other relief as this Court deems just and proper.

Dated:  September 26, 2013

By: _____
        Alan M. Lieberman (AL-6517)
        Telephone: (202) 551-4474
        Fax: (202) 772-9245
        liebermana@sec.gov
        U.S. Securities and Exchange Commission
        100 F Street, N.E.
        Washington, DC 20549-5977

Of Counsel:
Antonia Chion, Associate Director
Melissa Hodgman, Assistant Director
L. Delane Olson, Senior Counsel